IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| JAMES D. REESE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| NETSMART TECHNOLOGIES, INC. | ) | |
| Serve at: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street, Suite 3C | ) | REQUEST FOR JURY TRIAL |
| Topeka, KS 66603 | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW Plaintiff James D. Reese (hereinafter "Plaintiff") by and through his undersigned counsel and for his Complaint against Defendant Netsmart Technologies, Inc. (hereinafter, "Defendant") alleges and states as follows:

### **Parties and Jurisdiction**

1.     Plaintiff James D. Reese is a citizen of the United States, residing in Overland Park, Johnson County, Kansas, and, at all times pertinent to this Complaint, was an "employee" within the meaning of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the amendments thereto.

2.     Defendant, Netsmart Technologies, Inc., is a foreign for-profit entity, organized in the State of Delaware, existing within the laws of the State of Delaware. At all times relevant to this case, Defendant had its headquarters located at: 11100 Nall Avenue, Overland Park, Kansas 66211, registered to do business within the laws of the State of Kansas, and at all times pertinent to this Complaint for Damages, was an "employer" within the meaning of the ADA, and the amendments thereto.

1

3.    Defendant had the ability to discipline, hire, and fire employees, and at all times pertinent to this Complaint for Damages, was an "employer" within the meaning of the ADA, and the amendments thereto

4.    This is an employment discrimination lawsuit based upon and arising under ADA and the amendments thereto.

5.    All of the unlawful acts and practices set forth below were committed within Johnson County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1391, 42 U.S.C. § 12117(a), and 42 U.S.C. § 2000e–5(f)(3).

**<u>Administrative Procedure and Procedural Posture</u>**

6.    On or about June 18, 2020, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (hereinafter "EEOC") on the basis of Plaintiff's disability.  The Charge of Discrimination is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

7.    On or about November 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue Defendant.  The Notice of Right to Sue is attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

8.    The aforesaid Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC investigation of Plaintiff's claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

9.    Through the filing of Plaintiff's Charge of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

10.     Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## General Allegations Common to All Counts

11. On or about November 18, 2019, Plaintiff began working for Defendant as a technology solutions executive, which is a sales position.

12. Plaintiff has, and at all relevant times, had a heart condition.

13. Plaintiff was diagnosed with acute systolic congestive heart failure and nonischemic cardiomyopathy with pulmonary hypertension, making his heart weak and making him much more susceptible to COVID.

14. Plaintiff had to undergo a heart transplant in August of 2020 and because of this transplant, he is required to take four types of immune suppression drugs which make him immunocompromised and at very high risk for COVID as well as for other viruses and illness.

15. Plaintiff's heart condition substantially limits his major life activities, including working.

16. Plaintiff's heart condition substantially limits the operation of his cardiovascular system.

17. Plaintiff worked at Defendant's corporate headquarters in Overland Park, Kansas.

18. On or about February 10, 2020, Plaintiff notified his manager, Susan Sutherland, that he was scheduled for heart surgery on February 24, 2020.

19. Sutherland and Plaintiff spoke to Aimee Giles in Defendant's Human Resources Department on February 10, 2020 regarding Plaintiff's need for Short Term Disability (hereinafter, "STD") Benefits.

20. Plaintiff's STD leave was approved by Defendant's third-party administrator, Aetna.

21. Plaintiff was admitted to the Intensive Care Unit and Kansas University Medical Center on February 17, 2020 due to the issues with his heart.

22. Plaintiff underwent life-saving heart surgery on February 24, 2020, during which an LVAD heart pump was implanted.

23. Following his surgery, Plaintiff was cleared to return to full duty on April 20, 2020, with the restriction that he be allowed to work from home due to the increased risk of suffering serious harm or death from contracting the Coronavirus Disease 2019 ("COVID-19") due to his heart condition.

24. At that time, most of Defendant's employees were working from home due to the COVID-19 pandemic.

25. Defendant informed Plaintiff on June 4, 2020 that he would need to return to working on-site on June 8, 2020.

26. Plaintiff contacted Sutherland (in her role was his manager) on June 5, 2020 to remind her of his ongoing work restriction and inform her that his doctor would not approve Plaintiff's returning to the office at that point in Plaintiff's recovery.

27. Following Sutherland's direction, Plaintiff provided Human Resources, Amy Giles, documentation from his doctor showing the ongoing restriction and that he could not return to the office to work in-person at that time.

28. Also, on June 5, 2020, Plaintiff informed Sutherland that he was scheduled for cardiovascular rehabilitation on June 11, 2020 and was scheduled for a cardiac catheterization on June 16, 2020.

29. On June 11, 2020 Defendant's employee, Michelle Callstrom, notified Plaintiff via telephone that he was being terminated, citing the effects of the COVID-19 pandemic and low sales for Defendant.

30. At this time, Plaintiff was notified that because sales for the company were down, that they were downsizing and that was why they were terminating Plaintiff.

31. During the June 11, 2020 phone call, Plaintiff was informed that Defendant had an open position for which Plaintiff was qualified, and he was encouraged to send in his resume.

32. Plaintiff submitted his resume to Defendant's Human Resources department via electronic mail shortly after the phone call, but never received a response.

33.  Despite Defendant's alleged need to reduce staff due to lack of sales, Defendant posted at least five (5) sales job openings during the three (3) weeks following Plaintiff's termination.

34. Plaintiff was qualified for each of the five sales (5) jobs that were posted but was not directly notified of the openings by Defendant, nor by Defendant's recruiter.

35. One other individual was terminated after Plaintiff but was hired back shortly thereafter.

36. Plaintiff applied for numerous additional sales positions with Defendant that he was well qualified for, but he never heard back.

37. On information and belief, Plaintiff was terminated, not reassigned to another position by Defendant, and not hired to any position to which he applied following his termination due to his disability.

## COUNT I – DISPERATE TREATMENT AND DENIAL OF A REASONABLE ACCOMODATION IN VIOLATION OF THE ADA

38. Plaintiff re-alleges and incorporates the allegations contained in above-paragraphs as if fully set forth herein.

39. Plaintiff is disabled, as defined by the ADA, at all relevant times herein and/or Defendant regarded Plaintiff as being disabled.

40. Specifically, Plaintiff suffers medical conditions which substantially limit his major life activities, including self-care, working, and sleeping; his medical conditions also substantially limit the operation of a major bodily function, specifically the cardiovascular system. At all relevant times, including prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having such impairment.

41. Plaintiff is a qualified individual as defined by the ADA, due to his disability and/or Defendant's perception that Plaintiff is disabled.

42. Plaintiff could perform the essential functions of his job duties with Defendant with reasonable accommodation.

43. Defendant unlawfully and intentionally discriminated against Plaintiff based on his disability and/or because they regarded him as disabled and/or because of his record of disability, and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when they terminated Plaintiff's employment.

44. Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was a motivating factor in Defendant's decision to terminate Plaintiff's employment, to not reassign Plaintiff to another position, and to not hire Plaintiff for any of the positions to which he applied.

45. Plaintiff also requested a reasonable accommodation of being able to work from home, due to his medical condition, and this was denied without properly engaging in the interactive process.

46. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff was deprived of income, as well as other monetary and none-monetary benefits.

47. As a further and direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish and pain, and related compensatory damages.

48. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

49. All actions or inactions of or by Defendant occurred by or through its owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

50. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but limited to, back pay, lost benefits and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Sarah Liesen
Sarah Liesen    KS# 26988
208 W. Linwood Boulevard
Kansas City, Missouri 64110
Telephone: (816) 301-4056
Facsimile: (816) 463-8449
sliesen@elmlawkc.com

**ATTORNEY FOR PLAINTIFF**